P.J. HERCHENROEDER, Plaintiff,

v.

The JOHNS HOPKINS UNIVERSITY
APPLIED PHYSICS LABORATORY,
et al., Defendants.

Civil Action No. MJG–95–3329.

United States District Court,
D. Maryland.

Feb. 20, 1997.

Thomas L. McCally of Carr Goodson Lee & Warner, Washington, DC, for Plaintiff.

Jeffrey P. Ayres of Venable, Baetjer & Howard, LLP and Patrick A. Birk, Acting Laboratory Counsel, Johns Hopkins University Applied Physics Laboratory, Baltimore, MD, for Defendants.

### MEMORANDUM

PAUL W. GRIMM, United States Magistrate Judge.

On February 7, 1997 the Honorable Marvin J. Garbis, United States District Judge, referred this case to the undersigned for determination of all discovery disputes. (Paper No. 42). Currently pending is Defendant The Johns Hopkins University Applied Physics Laboratory's Motion to Compel Plaintiff's Answers to Deposition Inquiries (Paper No. 37) and Plaintiff's opposition thereto (Paper No. 38). For reasons discussed below, and

subject to the terms and conditions set forth, the Motion to Compel is granted in part and denied in part.

## BACKGROUND

Plaintiff, P.J. Herchenroeder ("Herchenroeder"), has sued her former employer, The Johns Hopkins University Applied Physics Laboratory ("APL"), and a former supervisor, Phil Sodergren ("Sodergren"). Herchenroeder alleges, *inter alia,* that she was sexually harassed in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000(e) *et seq.,* and that Sodergren defamed her by routinely accusing her of "having sexual relations with a business associate" [Warren Brood] with whom she often traveled. By Order dated September 24, 1996, the District Judge granted summary judgment in the Defendants' favor on all counts with the exception of the Title VII sexual harassment count and common law defamation count. (Paper Nos. 35 and 36).

■ Defendant APL deposed Herchenroeder on March 5 and 6, 1996. During the deposition, counsel for APL asked Herchenroeder whether she and Brood had ever engaged in any type of sexual activity. Herchenroeder replied "no." [1] APL's attorney then asked Herchenroeder whether she and Brood had "ever discussed" engaging in sexual activity. Upon instruction from her attorney, Herchenroeder refused to answer the question. [2]

Following the deposition, counsel for APL corresponded with counsel for Herchenroeder in an attempt to persuade him to withdraw his instruction not to answer the question. These efforts were unsuccessful and, on January 10, 1997, counsel for APL filed the pending Motion to Compel. [3] (Paper No. 37). Plaintiff subsequently filed a motion in opposition (Paper No. 38) to which APS has replied (Paper No. 41).

In its Motion to Compel, APL asserts that the information sought regarding whether Herchenroeder and Brood discussed engaging in any type of sexual activity is relevant for three reasons: (1) the inquiry is relevant to the Title VII claim because it might relate to "the environment in which alleged harassment occurred and any behavior of [the] Plaintiff which would have lead Sodergren ... to believe that his conduct, as alleged, was welcomed"; (2) the inquiry is relevant to the defamation claim, insofar as it may lead to admissible evidence showing that the statements allegedly made by Sodergren were true and/or were not made maliciously, recklessly, or neglectfully; and (3) the inquiry is relevant to the credibility of Brood who, in addition to being the co-worker with whom Herchenroeder allegedly had intimate relations, is also a critical witness on her behalf with regard to her sexual harassment claims.

In her opposition to the Motion to Compel, Herchenroeder asserts that the answer to the question objected to is not admissible into evidence under Fed.R.Evid. 412 and, thus, the information is not discoverable.

1. Additionally, when Boord was deposed he similarly denied engaging in any sexual activity with Herchenroeder.

2. It is noted that counsel for Herchenroeder neither asserted the existence of any privilege to support his instruction that she not answer the question nor evoked the provisions of Fed. R.Civ.P. 30(d)(3) to suspend the taking of the deposition while he sought a Court ruling regarding the appropriateness of the question. Such conduct is in clear violation of Fed. R.Civ.P. 30(d)(1) and Local Federal Discovery Guideline 5(d), both of which unambiguously proscribe instructions to a deponent not to answer a question, absent the assertion of a privilege. However, because of the somewhat unique issues presented by this discovery dispute, discussed *infra,* and given the fact that a review of the deposition transcript excerpts relevant to this

dispute demonstrate that Herchenroeder's counsel does not appear to have interposed his objection and instruction with the intent to disrupt the deposition, but instead to raise a legitimate discovery and evidentiary issue, it is my opinion that the instruction not to answer, though inappropriate, was nonetheless excusable. Counsel for both parties, however, should be aware that the circumstances under which failure to adhere to Fed.R.Civ.P. 30(d)(1) and Guideline 5(d) are excusable are few and far between.

3. The reason the Motion to Compel was not filed until early 1997, more than nine months after the last day of the deposition in question, is that the parties agreed to stay discovery proceedings while they attempted to settle the case with the assistance of United States Magistrate Judge Daniel Klein. These efforts were unsuccessful, and the Motion to Compel followed.

Herchenroeder points out that she answered "no" when directly questioned about whether she and Brood had engaged in sexual relations, and that her answer was fully corroborated by Brood during his deposition. Accordingly, she contends, the purpose of the question is simply to embarrass her, invade her privacy, and discourage her from proceeding with her claims against APL and Sodergren.

## DISCUSSION

■ Herchenroeder correctly notes that Fed.R.Evid. 412, amended in 1994, was intended to "afford increased protection to alleged victims of sexual misconduct, in either civil or criminal proceedings, to safeguard them against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process." [4] Moreover, the Advisory Committee Notes make it clear that Rule 412 applies in civil cases in general,[5] and Title VII sexual harassment cases in particular,[6] though it may not be applicable to certain defamation actions.[7] Further, the scope of the prohibition against admissibility of evidence of an alleged victim's sexual behavior or predisposition as established by Rule 412 is broad, reaching activities involving actual physical conduct, sexual intercourse or sexual contact, as well as activities of the mind, such as fantasies or dreams.[8]

■ Although it is clear that Fed.R.Evid. 412 will govern the admissibility of the evidence sought by counsel for APL *at trial*, *relevance* not *admissibility*, is the appropriate inquiry with regard to whether or not the information sought by APL is discoverable. *See* Fed.R.Civ.P. 26(b)(1).[9] Indeed, the Advisory Committee Notes to the 1994 amendments to Rule 412 make it clear that the focus of the rule is admissibility at trial, not discovery during pretrial proceedings.[10] In the words of the Committee Notes:

> procedures set forth in subsection (c) do not apply to *discovery* of a victim's past sexual conduct or predisposition in civil cases, which will be continued to be governed by Fed.R.Civ.P. 26.

Fed.R.Evid. 412, Advisory Committee Notes, Subdivision (c) (emphasis added).

However, the Committee Notes quickly add that:

> In order not to undermine the rationale of Rule 412, however, Courts should enter appropriate orders pursuant to Fed. R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to insure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant. under the

---

**4.** Advisory Committee Notes, 1994 amendment. See also M. Graham, Handbook of Federal Evidence (4th ed.) (1996) (hereinafter "Graham at ——"), Section 412.1, p. 480.

**5.** Professor Graham points out the following with respect to the 1994 amendments to Fed.R.Evid. 412: They were part of the Violent Crime Control and Enforcement Act of 1994, which became effective on December 1, 1994. During its review of the proposed revisions to the rule, the U.S. Supreme Court deleted the provisions of the rule which extended its applicability to civil cases. However, Congress rejected the Supreme Court's version of the rule in favor of the version drafted by the Judicial Conference of the United States, which contained provisions extending Rule.412 to civil cases. Graham at Section 412.1, p. 476, note 1.

**6.** *See Judd v. Rodman*, No. 95–8888, 1997 WL 33035, at *3 (11th Cir. February 13, 1997) (collecting cases).

**7.** Graham, Section 412.1 at 480 (Rule 412 should not apply to a defamation action "involving statements concerning sexual misconduct in which the evidence is offered to show that the alleged defamatory statements were true or did not damage the plaintiff's reputation").

**8.** *Id.*

**9.** ("Parties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action.... [I]nformation sought need not be *admissible* at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence") (emphasis added).

**10.** *See also* Graham, Section 412.1 at p. 486.

facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the work place may perhaps be relevant, non-work place conduct will usually be irrelevant.... Confidentiality orders should be presumptively granted as well.

*Id.*

Additionally, other courts have held that, in sexual harassment cases, Rule 412 is applicable to resolving discovery disputes involving an alleged victim's past sexual behavior. *See, e.g., Sanchez v. Zabihi,* 166 F.R.D. 500 (D.N.M.1996) (Rule 412 is significant in determining discovery disputes regarding sexual harassment victims' past personal, romantic or sexual behavior at the workplace); *Barta v. City and County of Honolulu,* 169 F.R.D. 132, 135 (D.Haw.1996) (holding that Rule 412 "must inform the proper scope of discovery" in sexual harassment cases). Thus, in determining whether the requested discovery in the present case is appropriate, I must look to both Fed.R.Civ.P. 26 and Fed.R.Evid. 412.

■ I am persuaded that the information sought by the questions posed to Herchenroeder has some relevance, as contemplated by Fed.R.Civ.P. 26(b), to her Title VII [11] and defamation claims against the Defendants, and is also relevant with respect to the credibility of Boord, a critical witness on her behalf. However, I am also keenly aware of the highly sensitive nature of the subject matter of the inquiry. Accordingly, I do not believe that the requested discovery should be permitted without an appropriate protective order/confidentiality agreement as contemplated by Fed.R.Evid. 412. In this regard, APL indicates that it is willing to enter into such a protective order. (Paper No. 38 at 3).

In addition, I believe that the requested discovery should be obtained by the least intrusive means possible. In a letter dated May 13, 1996, counsel for APL identified "[t]he two precise questions" he would like to have answered by Herchenroeder. They are:

1. Have you and Mr. Boord ever discussed having a sexual relationship?

2. Do you deny ever discussing with Mr. Boord having a sexual relationship?

Given the fact that counsel for APL acknowledges that the inquiry he desires may be answered by responses to these two "precise" questions, pursuant to Fed.R.Civ.P. 26(c)(3), I will order that they be posed to her in the form of written interrogatories, to be answered in writing, under oath as provided by Fed.R.Civ.P. 33(b). It is expected that Herchenroeder will respond to these questions completely and candidly.[12] Thereafter, if counsel, for APL believes that further inquiry into this subject matter is warranted, he can so advise me and I will determine at that time whether the Plaintiff should be required to submit to further questioning by way of oral examination in a continued deposition.[13]

With respect to the terms of the protective order/ confidentiality agreement, I would like

---

11. *See Burns v. McGregor Electronic Industries Inc.,* 989 F.2d 959, 962–63 (8th Cir.1993) (a Title VII plaintiff's behavior at work, if provocative and suggestive, may be relevant to the employer's defense, but conduct in her private life unrelated to work is not); *Barta v. City and County of Honolulu,* 169 F.R.D. 132 (D.Haw.1996) (sexual conduct of alleged sexual harassment victim while on duty at the workplace and with named defendants is discoverable under Fed.R.Civ.P. 26 and Fed.R.Evid. 412, while conduct off duty and outside of the workplace is not); *Sanchez v. Zabihi,* 166 F.R.D. 500 (D.N.M.1996) (holding that certain "narrowly tailored" inquiries into alleged sexual harassment victim's personal, romantic or sexual activities at the place of employment is permitted by Fed.R.Civ.P. 26 and Fed.

R.Evid. 412); Graham, Section 413.1, p. 486 ("In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-workplace conduct will usually be irrelevant.").

12. *See* Fed.R.Civ.P. 37(a)(3) (an evasive or incomplete answer to an interrogatory is deemed to be a refusal to answer).

13. To save the parties time and expense, future communications with the Court on this issue may be accomplished by informal correspondence, served on the parties, rather than by motions with memoranda.

the parties to confer in an attempt to negotiate appropriate terms by consent.[14] If they are unable to do so, I will establish these terms. Counsel for APL may serve the above two interrogatories on the Plaintiff once the terms of the protective order/confidentiality agreement have been reached and I have been notified in writing of this agreement, or, if the parties are unable to agree, an Order is imposed by the Court.

The Court at this time will not require that either party show cause as to why costs and expenses should not be assessed. Fed. R.Civ.P. 37(a)(4)(B). I will, however, revisit this issue if, upon motion, I find that candid and complete responses to Defendant's interrogatories were not forthcoming.

A separate Order shall issue in accordance with this Memorandum.

14. In this regard, the parties may wish to review the protective orders entered by the court in *Sanchez v. Zabihi,* 166 F.R.D. 500 (D.N.M.1996) and *Barta v. City and County of Honolulu,* 169 F.R.D. 132 (D.Haw.1996), which I find instructive.